## No. 9279

### Orleans

---

## LOYACANO v. VILLERE AND BURGLASS

---

(Feb. 28, 1927.   Opinion and Decree.)
(Mar. 14, 1927.   Rehearing Refused.)
(April 26, 1927.   Writ of Certiorari and Review denied by Supreme Court.)

---

*(Syllabus by the Court)*

1. Louisiana Digest—Judgment—Par. 159.

When a landlord, having secured judgment against tenant and surety on lease for rent during unexpired term, seizes and sells under fi. fa. the furniture, but not the right of occupancy, which is then seized by another judgment creditor of the tenant, he cannot then sue to cancel lease, because all his rights are crystallized in the judgment.

Appeal from Division "C" Civil District Court.  Hon. Porter Parker, Judge.

Action by Anthony P. Loyacano against Mrs. Septime Villere and Abraham Burglass.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Prowell and McBride, of New Orleans; attorneys for plaintiff, appellant.

W. O. Hart, Edward Rightor, S. S. Goldman, E. J. Pruye, attorneys for defendants, appellees.

JONES, J.   This suit was filed on June 7, 1923, by the landlord Loyacano against his tenant, Mrs. Septime Villere, and her judgment creditor, Burglass, who had seized the lease and the right of occupancy.

Plaintiff alleges substantially as follows:

1. That the lessee had failed to pay five rent notes and that he was entitled to have said lease cancelled, because he had reserved the right of cancellation in the event of the lessee's failure to pay the rent as it fell due, all as more fully shown by the said lease and notes which, though annexed to the proceedings entitled Loyacano vs. Villere, No. 146,203, Civil District Court, were made a part of the suit.

2. That Abraham Burglass had seized under a judgment Mrs. Villere's lease and her right of occupancy.

Plaintiff then prays that both defendants be cited to show cause why the lease should not be cancelled.

Mrs. Villere, though duly served with citation, made no appearance.

Burglass, along with his answer, which denied all plaintiff's allegations save his seizure, filed the following exceptions:

1. That plaintiff's petition is inconsistent with his enforcement of the lease between him and defendant, Mrs. Villere, because in the proceedings entitled Anthony P. Loyacano vs. Mrs. Villere, No. 146,203, Civil District Court, plaintiff had obtained judgment for the full term of the lease and had seized and sold under fi. fa. the furniture and effects belonging to lessee in said leased premises.

2. That plaintiff is estopped from seeking a cancellation of the lease on account of the action taken in proceedings No. 146,203, Civil District Court.

3. That said petition sets forth no cause of action.

On said trial of these exceptions the record in suit No. 146,203 of the Civil District Court was offered in evidence and it was proved that property seized under fi. fa. issued in this case had been sold for six hundred forty-one and 60-100 ($641.60) dollars, that the sheriff's costs were two hundred eighty-seven and 79-100 ($287.79) dollars, and that the balance was being held subject to decision of the court on an intervention.

It was admitted that five rent notes had not been paid.

The record in the provisional seizure suit shows that Loyacano on March 16, 1923, filed suit against his tenant, Mrs. Villere, and the surety on the lease, Ellis Headly, for three thousand, three hundred and sixty dollars ($3,360.00), plus ten per cent attorney's fee on the ground that she had failed to pay two rent notes amounting to three hundred and twenty dollars ($320.00) dollars and that under the terms of the lease, the rent for the whole unexpired term (21 months) was due and owing.

As the defendants made no appearance and the lease and attached notes proved the claim, judgment was given on April 19, 1923, against both defendants, in solido, for the amount claimed, three thousand three hundred and sixty dollars ($3,360.00), plus ten per cent attorney's fee; that on March 26, 1923, the sheriff seized, under a writ of fieri facias all the furniture and movable effects in the leased premises.

Plaintiff contends, in this court, that the landlord by obtaining judgment for the unexpired term of the lease did not destroy his right to sue for cancellation of the lease, because the primary obligation of the tenant to pay the rent continued to exist. In the support of his contention he cites the cases of Canal Bank, et als., vs. Copeland, 15 La. 75, and Watson vs. Feitel, 139 La. 375, 71 So. 585.

In the first case, plaintiff, who had already brought a suit for specific performance of a contract to purchase a lot of ground and had obtained judgment, then sued to rescind the sale for non-payment of the purchase price. An exception of inconsistency in demands, which had been maintained by the lower court was overruled by the Supreme Court and the sale was rescinded. In the course of the opinion the court uses the following language:

"It must not be forgotten also in considering the bearing of Art. 149 of the Code of Practice on this case that the suit brought and the judgment obtained by the plaintiffs is not for the price of the property sold, but for the specific performance of the adjudication. It is true that it draws the payment in cash of the first settlement, because it would have been idle to order the defendant to make his note payable at a time already gone by, but this circumstance does not change the nature of the judgment under which no execution could issue for the price."

This decision, even if it is not overruled by later decisions quoted below, is not controlling here, because Loyacano in this proceeding prayed for and secured an unqualified judgment for three thousand three hundred and sixty dollars ($3,360.00), plus ten per cent attorney's fee, and he at once had issued a fi. fa. for the entire amount. Had the judgment in the case been for rent payable so much per month during the life of the lease as was the judgment in the suit for specific performance payable according to the terms of the contract to sell, the analogy would have been closed.

The second case was a suit to rescind a sale for non-payment of purchase price brought the next day after defendant had been put formally in default. Defendant

then made a tender of the amount due with interest and costs, but the lower court held that tender was made too late after putting in default and rescinded the sale. The learned, carefully reasoned opinion of Justice Provosty, the organ of the Supreme Court on appeal, deals entirely with the legal effect of putting in default. After copious references to French authorities and a detailed analysis of all the prior decisions of the Louisiana Supreme Court on the subject, he finally reverses the lower court and holds that the tender was not too late. On page 386 of the opinion he quotes from Larombiere, vol. 2, page 353, S. 46, as follows:

"In a word the defendant is not barred from the right of paying until the resolution is definitely adjudicated in favor of the plaintiff; that is to say, when the judgment which has been rendered has become definitive and final."

The learned Justice then shows that this doctrine is affirmed by many other commentators and concludes that part of his opinion by stating that the great French writers all approve.

It is plain that this decision cannot help plaintiff here for he has secured a definitive judgment, which has now the authority of the thing adjudged. In other words, plaintiff had two rights under the lease and the law when lessee failed to pay the rent as it fell due. He could either sue for the rent due and cancel the lease for the unexpired term, or he could sue for the rent for the whole unexpired term. Here he preferred the second alternative and secured judgment against his tenant and her surety for three thousand three hundred and sixty dollars ($3,360.00), rent for the unexpired time of the lease. He could then have seized the right of occupancy under his fi. fa. and sold this asset along with the furniture and the movable effects, but he failed to do so and this was seized by another judgment creditor.

Having deliberately exercised his choice and secured an unqualified judgment against the tenant and her surety, all his rights were crystallized in the judgment and that judgment now has the sanctity and authority of the thing adjudged.

The fundamental time-honored principle is well stated by Elliott on Contracts, S. 1985, as follows:

"If there be any one principle of law settled beyond all question, it is true, that whensoever a cause of action in the language of the law, transit in rem judicatam, and the judgment thereupon remains in full force unreversed, the original cause of action is merged and gone forever. 24 (See United States vs. Leffler, 11 Pet. (U. S.) 86.) It would indeed be difficult to find a general doctrine announced more emphatically or in broader terms than this one. Clear cut and unambiguous, it can mean but one thing, and that is exactly what it says. Moreover, 'cause of action', used as it is here, is not a phrase or restricted meaning, but must necessarily include causes of action arising from crime, tort and contract alike. In other words, where a person sues ex contractu and recovers a valid judgment upon the merits he must, provided he does not thereafter obtain satisfaction of the amount owing him, sue upon the judgment, as evidence of his claim, rather than upon the original contract, i. e., the latter is merged in the former."

Our Supreme Court has ratified this doctrine in the following words:

"Matters once determined by a court of competent jurisdiction, if the judgment has become final, can never again be called into question by the parties or their privies, though the judgment may have been erroneous and liable to certain reversal on appeal." (La. Digest, vol. IV, 376.)

The same court, in rent cases similar to the present, has recently applied this basic principle in three decisions.

Harvin vs. Blackman, 112 La. 24, 36 So. 213:

"Judgments against a tenant for rent and eviction, while not technically res judicata, because the delay for taking devolutive appeal had not expired; preclude any further action by the same court on the matters litigated, the sole remedy of the party cast being by appeal."

In Succession of Romero, 137 La. 251, 68 So. 433, the law on the subject is thus stated:

"* * * so long as the contract (of lease) exists, the lessor is entitled to recover his rent according to its terms, if he can, or where the lessee abandons the premises, by at once enforcing his claim against the property subject to his privileges and pledge, in order to do which he may obtain a judgment, and otherwise execute it in accordance with the terms of the contract, and that the lessee is entitled to the possession, fruits and revenues of the property whether he occupies or abandons it, pays the rent or leaves it unpaid, since he cannot terminate the lease by violating its provisions, and though the lessor may terminate it, for violations by the lessee, he is not obligated to do so, and if he prefers to seek its continued enforcement, he thereby concedes to the lessee the right which it confers upon him."

In Rose Mercantile Co. vs. Stearns, 154 La. 946, 98 So. 429, the court uses the following language:

"If the lessee fails to pay his rent as it matures, the lessor may hold him liable for the rent due for the expired term of the lease, and may sue to dissolve the contract and evict the lessee, or, if he should so elect, he may hold the lessee for the rent, both for the expired and unexpired terms of the lease, and may sue accordingly. If, however, he elects to avail himself of the latter right, he elects to continue the contract in force, notwithstanding the default of the lessee in his payments, and thereby accords to the latter the right to remain on the premises and to use them in accordance with the terms of the lease, and continues in force the obligation imposed by law upon him to maintain the lessee in the peaceable possession of the property."

For the above reasons, the judgment is affirmed.